| | | |
|---|---|---|
| **DENA C. SMITH COCHRAN** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. _____** |
| **vs.** | ) | **(Jury Demanded)** |
| | ) | |
| **MONUMENTAL LIFE INSURANCE** | ) | |
| **CO.** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

### Introduction

Plaintiff, Dena C. Smith Cochran ("Cochran"), by and through counsel, brings the instant cause of action against Defendant, Monumental Life Insurance Co. ("Monumental" or "Company"), for violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.* ("Title VII"); the American with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA"); the Tennessee Human Rights Act, Tenn. Code Ann. §4-21-101, *et seq.* ("THRA"); the Tennessee Disability Act, Tenn. Code Ann. §8-50-103 ("TDA"); and the Family and Medical Leave Act, 29 U.S.C. §2601, *et seq.* ("FMLA").

### Jurisdiction and Venue

1. This Court has jurisdiction over Cochran's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) and over her state law claims pursuant to the doctrine of supplemental jurisdiction, 28 U.S.C. § 1367. The Court also has diversity jurisdiction over this matter based on 28 U.S.C. § 1332 as the dispute is between citizens of different states and involves an amount in controversy in excess of $75,000.00.

1

2.     Cochran filed a Charge of Discrimination with the EEOC in May 2011 and thereafter filed an Amended Charge of Discrimination with the EEOC on August 10, 2011. The EEOC issued a Notice of Right to Sue dated March 20, 2012 and less than ninety (90) days have passed since Cochran's receipt of the same. (A copy of the Notice of Right to Sue is attached as *Exhibit A*).

3.     This action properly lies in the Eastern District of Tennessee at Knoxville pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to Cochran's claims occurred in this judicial district.

### *Parties*

4.     Cochran is a female citizen and resident of Sevier County, Gatlinburg, Tennessee and is 51 years old.

5.     Monumental is a Iowa corporation and, at all times material to this controversy, has regularly and continuously engaged in business in the State of Tennessee as well as in the Eastern District of Tennessee. Monumental can be served with process through its registered agent Craig D. Vermie at 4333 Edgewood Road NE, Cedar Rapids, Iowa 52404.

6.     Monumental employs more than fifty (50) employees.

### *Facts*

7.     Monumental employed Cochran for over twenty years until the effective date of her termination on March 1, 2012. At all times material to this dispute, Cochran served as a Regional Vice President ("RVP") for Monumental. Cochran was qualified to serve as a RVP and performed the job in a satisfactory manner until she was wrongfully removed from the job on June 13, 2011. Cochran's immediate supervisor was Charles Green ("Green").

8.    Cochran was the first and only female RVP. However, during her employment with Monumental, she suffered materially adverse employment actions that tangibly affected her performance, compensation, position and, ultimately, her employment with the Company because of her gender, disability and/or protected activity engaged in by her. The adverse employment actions taken against Cochran include the intentional manipulation of her sales territory in a manner that adversely impacted her compensation; the intentional alteration of her job description to prevent her from performing the position of RVP with a physical impairment; altering the terms and conditions of her employment with abusive and hostile behavior towards her; removing her from the position of RVP and replacing her with a male employee; and terminating her.

9.    Monumental's gender bias and its motivation for taking the above adverse actions against Cochran was evidenced as early as 2008 when her supervisor told certain male RVPs, "don't let that girl beat you" in reference to Cochran's sales performance. Indeed, Green only hired white males for the position of RVP. Moreover, during a sales meeting in Somerset Kentucky on April 12, 2011, Green stated that the Company had hired an African American and a female as Agents and was shocked that they had outperformed everyone else– *i.e.*: white male agents.

10.    In January 2010, Monumental transferred Cochran from an established and profitable region where she had worked for some 20 years, encompassing Missouri, Indiana as well as parts of Illinois, Kentucky and North Carolina, and assigned the territory to a male RVP. Cochran's new region was focused in Tennessee and Kentucky and she thus relocated her residence from Kansas City, Missouri to Gatlinburg, Tennessee.

11.    Cochran's transfer resulted in a significant decrease in Cochran's compensation but afforded the male RVP who assumed her former territory greater opportunities for bonus income and

3

advancement within the Company. Since taking over the territory served and developed by Cochran for over twenty years, the male RVP has been promoted to Senior RVP. Cochran, in turn, has been fired.

12. Upon her transfer from Kansas City, the number of agents and population under her supervision decreased– a circumstance, upon information and belief, no male RVP has experienced. Male RVPs, moreover, generally had more agents and a larger population, and, therefore, a greater ability to generate income than Cochran. Compounding the negative impact of her change in territory, not long after her relocation from Kansas City, Monumental removed an office in Hazard, Kentucky from Cochran's new territory and assigned it to a male RVP in March 2010, again resulting in a decrease in Cochran's overall compensation.

13. In June 2010, while traveling for the Company, Cochran was involved in a car accident with an elk in Pikeville, Kentucky and suffered serious injuries, including herniated discs at the L4/L5 vertebrae. Because of her injuries, Cochran ultimately suffered certain restrictions upon her ability to sit and stand and further required certain physical therapy.

14. Some months later in January 2011, Green insisted Cochran go on disability despite her ability to perform the essential functions of her job as RVP with minor accommodations. Cochran reported the matter to Monumental's legal department and was advised to seek FMLA leave through Human Resources.

15. Human Resources, in turn, questioned Cochran's eligibility for disability leave in light of her ability to meet the requirements of her job. Green thereafter revised her job description to conflict with Cochran's medical restrictions by imposing additional travel requirements upon the job. Cochran thus was forced to take FMLA leave in order to protect her job in January 2011.

4

16.     Cochran returned to work from FMLA leave on April 8, 2011 but her sales territory had once again been realigned. Although sales territories normally are realigned in November for the upcoming year, Green realigned Cochran's sales territory prior to her return to work. Specifically, Green removed three offices from her territory (two of which were her highest producing offices) and assigned them to a male RVP. He then moved three poor performing offices from the territory of a male RVP into Cochran's territory. Green's changes to Cochran's territory potentially put her career in jeopardy since the RVP with the lowest performance is subject to termination.

17.     On April 8, 2011, Cochran e-mailed Green, with a copy to the Company President, Pete Adkins, objecting to the realignment as retaliation for being on disability and to the Company's continuous discrimination against her for not being in the "GOOD O BOYS CLUB." Adkins responded by e-mail, with a copy to Green and the Company's General Counsel, directing Cochran to discuss the matter with the Legal Department.

18.     Cochran subsequently reported Green's actions to the Legal Department and Human Resources. Following Cochran's report to the Legal Department and Human Resources, Green's behavior grew more abusive and hostile, causing Cochran to suffer both stress and fear.

19.     Green followed her in a harassing manner, attending appointments under the pretext of observation, unreasonably criticized Cochran and unreasonably dictated tasks for her to perform. On April 12, 2011, Green and Cochran met with the District Manager at the Somerset, Kentucky district office. After the meeting, Green met with Cochran in the lobby of his hotel and was abusive, hostile and intimidating toward Cochran.

20.     On May 5, 2011, Green required Cochran to drive over 180 miles to meet with him

5

for an unscheduled meeting to perform her annual review. During the meeting, Green became extremely hostile: slamming his hands on the table; glaring at Cochran; and otherwise communicating with her in a threatening tone and hostile manner. Green told Cochran, "you always need to be worried when I'm not talking to you because I am looking for your replacement." He also told her the only reason she served on a Board of Directors was because a male RVP wasn't ready.

21.     Cochran e-mailed the Company President on May 8, 2011 and reported these and other events, noting "I am afraid of him." Green's conduct altered the terms and conditions of Cochran's employment and interfered with her job performance.

22.     Cochran took another leave of absence on May 31, 2011, and Monumental replaced her with a male employee. By letter dated June 13, 2011, Green, claiming an undue hardship on her region and the Company, advised Cochran that Monumental no longer could hold her RVP position open as her twelve (12 ) weeks of FMLA leave had expired. The letter went on to claim that the Company would make every effort to place Cochran in an open management position within a reasonable driving distance from her home following the expiration of any Short Term Disability period or the denial of Cochran's leave request.

23.     Following the expiration of Short Term Disability, Cochran later was denied Long Term Disability on November 30, 2011. Monumental ultimately terminated Cochran effective March 1, 2012, claiming it could not accommodate Cochran's request to work from home for two days per week and in the field for the remaining three days per week. Cochran had requested to be returned to her position of RVP or an alternative job of Zone Manager (both jobs could be performed

6

with the accommodation requested by Cochran), but Monumental stated such positions were not available.

24.     Monumental instead offered Cochran the subordinate positions of Sales Manager or Agent. Cochran, however, could not perform the essential functions of these positions because the positions require extensive travel in the field throughout the week.

25.     At the time of Cochran's discharge from Monumental, Cochran suffered from, had a record of and/or was regarded to have a physical impairment that substantially limited the major life activities of standing, sitting and working.

### Causes of Action

### One
### Title VII

26.     Cochran incorporates by this reference Paragraphs 1 through 25 of this Complaint as though fully set forth herein.

27.     Monumental intentionally discriminated against and harassed Cochran because of her gender in violation of Title VII.

28.     Monumental retaliated against Cochran in violation of Title VII because she engaged in activity protected by the Act.

29.     As a direct and proximate result of Monumental's discriminatory, harassing and retaliatory actions, Cochran has suffered loss of income and benefits, humiliation, embarrassment and emotional distress.

30.     Monumental's actions were intentional, reckless and/or malicious and are sufficient to justify the imposition of punitive damages.

## Two
### Americans with Disabilities Act

31.     Cochran incorporates by this reference Paragraphs 1 through 30 of this Complaint as though fully set forth herein.

32.     At all times pertinent hereto, Cochran has been an individual with a "disability" within the meaning of the Americans with Disabilities Act, 42 U.S.C. § 12102(1)-(3). More particularly, Cochran has a physical impairment that substantially limits one or more of her major life activities; has a record of such impairment and/or is regarded by Monumental as having such an impairment.

33.     Cochran is a "qualified individual with a disability" as that term is defined by the ADA, 42 U.S.C. § 12111(8). More specifically, Cochran is an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the RVP position.

34.     Monumental intentionally changed the responsibilities of the RVP position so that Cochran could not perform the same absent a reasonable accommodation. Prior to such change in responsibilities, Cochran had satisfactorily performed the job. Subsequent to the such change in responsibilities, and despite Cochran's request for the same, Monumental refused to make reasonable accommodations for Cochran or take other appropriate remedial action.

35.     Monumental's failure to make reasonable accommodation for Cochran's disability constitutes discrimination against her with respect to the terms, condition, or privileges of employment and violate the ADA.

36.     Cochran's disability was a motivating factor and made a difference in Monumental's decision to discharge her. Monumental's termination of Cochran's employment on the basis of her disability is a discriminatory action prohibited by the ADA.

8

37. Monumental retaliated against Cochran in violation of the ADA because she engaged in activity protected by the Act.

38. As direct and proximate result of Monumental's discriminatory and retaliatory actions, Cochran has suffered loss of income and benefits, humiliation, embarrassment and emotional distress.

39. Monumental's actions were intentional, reckless and/or malicious and are sufficient to justify the imposition of punitive damages.

### Three
### Tennessee Human Rights Act

40. Cochran incorporates by this reference Paragraphs 1 through 39 of this Complaint as though fully set forth herein.

41. Monumental intentionally discriminated against and harassed Cochran because of her gender in violation of the THRA.

42. Monumental retaliated against Cochran in violation of the THRA because she engaged in activity protected by the Act.

43. As a direct and proximate result of Monumental's discriminatory, harassing and retaliatory actions, Cochran has suffered loss of income and benefits, humiliation, embarrassment and emotional distress.

### Count Four
### Tennessee Disability Act

44. Cochran incorporates by this reference Paragraphs 1 through 43 of this Complaint as though fully set forth herein.

9

45.     At all times pertinent hereto, Cochran has been an individual with a "Disability" within the meaning of the THRA, Tenn. Code Ann. §4-21-102(3)(A). More particularly, Cochran has a physical impairment that substantially limits one or more of her major life activities; has a record of such impairment and/or is regarded by Monumental as having such an impairment.

46.     Cochran's disability was a motivating factor and made a difference in Monumental's decision to discharge her. Monumental's termination of Cochran's employment on the basis of her disability is a discriminatory action prohibited by the TDA.

47.     Monumental retaliated against Cochran in violation of the THRA because she engaged in activity protected by the Act.

48.     As a direct and proximate result of Monumental's discriminatory and retaliatory actions, Cochran has suffered loss of income and benefits, humiliation, embarrassment and emotional distress.

### Count Five
### Family and Medical Leave Act

49.     Cochran incorporates by this reference Paragraphs 1 through 48 of this Complaint as though fully set forth herein.

50.     The actions of Monumental set forth herein constitute willful interference with Cochran's rights under the FMLA.

51.     Monumental willfully retaliated against Cochran because she exercised her rights to leave under the FMLA.

52.     As a direct and proximate result of Monumental's discriminatory and retaliatory actions in violation of the FMLA, Cochran has suffered loss of income and benefits.

10

*Request for Relief*

WHEREFORE, Cochran respectfully requests that this Honorable Court:

a. Declare Monumental's conduct to be in violation of her rights under Title VII, the ADA, the TDA, the THRA, and the FMLA.

b. Enjoin Monumental from engaging in such conduct;

c. Award Cochran back pay and any and all lost benefits, including lost health insurance, medical benefits, retirement benefits and all other fringe benefits.

d. Award Cochran liquidated damages under the FMLA;

e. Reinstate Cochran to her rightful place as a RVP, or, in lieu of reinstatement, order front pay and any and all lost benefits;

f. Award Cochran compensatory damages in the amount of Five Hundred Thousand Dollars ($500,000.00) for humiliation, embarrassment, emotional distress and mental anguish;

g. Award Cochran Five Hundred Thousand Dollars ($500,000.00) in punitive damages;

h. Award Cochran her costs and attorneys' fees;

i. Award Cochran prejudgment interest at the maximum rate allowed by law; and

j. Grant such other relief as the Court may deem just and proper.

*Jury Demand*

Cochran demands a trial of all claims by a jury.

Respectfully submitted,

ARNETT, DRAPER AND HAGOOD

By: _____
    Jay W. Mader, BPR #016199
    Stacie D. Miller, BPR #024155
    Attorneys for Plaintiff

12

## <u>VERIFICATION</u>

Dena C. Smith Cochran, having been duly sworn according to law, makes oath that she has read the foregoing Complaint and that the facts set forth therein are true to the best of her knowledge, information and belief.

DENA C. SMITH COCHRAN

Sworn to and subscribed before me this

_27th_ day of March 2012.

Notary Public

My commission expires: _4/10/2012_

13